Sixth case, the United States v. Dade. May it please the court, my name is Michael Thompson and I represent the United States v. Dade. Mr. Dade brings this appeal from a sentence imposed in the district court appealing the district court's imposition of a two-level guideline enhancement for his role in the offense. The court determined that he was a manager or supervisor in the mortgage fraud to which he pled guilty. This appeal really comes down to two separate but related questions. First, whether the district court stated sufficient reasons and followed proper procedures to enforce that enhancement. And second, whether the facts of the case, even if all of the facts reported by the government are assumed to be true, could justify the imposition of that enhancement. In this case, the district court's imposition of the enhancement wasn't based on any sort of findings of the role that Mr. Dade actually played in the offense or the task that he performed. The district court merely made the bald assertion that he was clearly a manager and that therefore a two-level enhancement was appropriate. The district court did not conduct an analysis of the hierarchy of the participants in the offense and that's the sort of analysis that's required by recent precedent of this court. The court in a recent case in 2013, U.S. v. Weaver, this court stated that there must be some hierarchy among those involved in a criminal activity in order to qualify any defendant for an enhancement under this section of the guidelines. The district court in this case never found that there was such a hierarchy and never found that Mr. Dade was at any other level of the hierarchy than any of the other participants of the offense. Furthermore, even the evidence cited by the government in its brief shows that Mr. Dade did not occupy any position higher than his co-dependents in the case. In the government's recitation of the facts of the case, they indicated that during at least one of the transactions, it was co-defendant Chisholm who was seeking out potential buyers to participate in the mortgage fraud, referring those buyers to Jason Dade and then instructing Dade when the documentation was insufficient to qualify for the fraudulent loans. On page four and five of the government's brief, during the statement of the facts, they lay these facts out and apparently it was actually co-defendant Chisholm who instructed Dade about the amount of money that would need to be contained in the fraudulent documents that were being prepared and instructed Dade to prepare them. This wasn't something that Mr. Dade was doing on his own. It wasn't something that he was instructing his co-defendants to do. It was something they were instructing him to do. So Mr. Dade did not occupy any position of greater authority than at least this co-defendant and because of that, there is no basis to enhance a sentence for being an organizer or leader. The Weaver court stated that in evaluating whether a defendant's control and authority over others merits a manager-supervisor enhancement, district court should make a common-sense judgment about the defendant's relative culpability given his status in the criminal hierarchy. The district court failed to do that in this case. The district court didn't state any basis for establishing that he held a role in any hierarchy or indeed that any hierarchy existed. The district court merely made the conclusory statement that the enhancement was appropriate because he was a leader. Well didn't Dade provide the fake documents and then instructed people on how to assemble the fraudulent applications? There were certain fake documents that were provided by Mr. Dade. Most of them were prepared by another party and he provided them by email to some of the co-conspirators over whom he's alleged to have. Somebody else prepared them but it was his responsibility to get it out electronically to those who were going to apply for the phony mortgages or those like Chisholm who then passed it on. Yes, the co-defendants in question here are primarily mortgage brokers. Mr. Dade is sending the fraudulent documents to them in order for the loan applications to clear. Everybody knew the loan applications were fraudulent, the loans would be obtained in bad faith. He provided the documents electronically so that those applications would go through and be approved but that doesn't qualify as leadership. He's just providing the necessary materials. So of course without him though the thing wouldn't have gone forward. That's true and without the brokers it wouldn't have gone forward either. Mr. Dade lacked the ability to do what they did. They lacked the ability to do what he did. But it had to start somewhere and of course the phony documents is how it started and then it trickled to the broker. Certainly the phony documents were a necessary component. I'm not sure that they necessarily started there because the buyers had to be recruited at some point. Some of them were brought in by Mr. Dade, some of them were brought in by other parties. Everybody was bringing them in, working together to profit from the offense. Right, but then once everybody was brought in it was Dade's job to get the documents out to everybody. Certainly on some occasions that's true but I don't think that merely providing the necessary documents qualifies as exercising control over authority or organizing the other offenders in this case. Mr. Dade exercised, excuse me, performed his own role and other parties in the offense performed their role. They coordinated together. They each profited based on the offense and there was no strict hierarchy of the kind that would be required to assign various roles to the parties in the offense. Did Mr. Dade direct Ms. Peters to modify the amounts, Mr. Thompson? Your Honor, I think that that probably did happen in this case. Now the only evidence we have of that basically comes from the government's version of the offense but even assuming that is true I don't think that's enough to qualify him at least under the district court's analysis or lack thereof as an organizer or leader. Well didn't she admit, she admitted it in her plea agreement. It's not probably. She admitted in her plea agreement that Dade told her the amount shown on the leases were too low and instructed her to increase the amount. Yes and even assuming that did happen I don't think that's enough to justify the imposition of the enhancement that was applied in this case because there was no finding of who the average member is or what role Mr. Dade played or the things that would be required to actually perform a comparative analysis of the members of the offense. I think perhaps Ms. Peters... Isn't control over just one participant enough to justify an upward adjustment like with the Peters situation? Because he tells her it's too low, she then increases the amount, she gets it revised, she gives it back to Dade who then passes them on. I think there are situations in which that could be enough, Your Honor. I don't think this was one of them. Instructing someone to change an amount in a document that's necessary to carry out the offense isn't necessarily exercising control over them. Just like if a waitress in a restaurant takes an order and tells the cook what to make and when to make it, that's not exercising control. That's just performing a task necessary to complete a job. I think that's exactly what was happening in this case. If there are no further questions... What was Mr. Dade's ultimate sentence? He received 20 months, I believe, Your Honor, which was a below guideline sentence. I was just going to say, this was a significant fraud, wasn't it? It was significant, Your Honor, but the district court considered the 3553 factors and departed downward from the guidelines. If we accepted your position, what would the guideline range be when I went back? It would still be above the 20 months, Your Honor. I don't have the number in mind. Well, that's the point. I mean, well, Your Honor, one of the things in imposing the sentence, one of the things the district court noted was that while there were many 3553A factors in Mr. Dade's favor, it was opposing a sentence with the role that had been assessed to him in mind, meaning the leadership role in the offense. So I think that if that role had not been assessed, the sentence could have given him less than 20. Certainly, Your Honor, that is a possibility. It's also a possibility to give him more than 20. It is possible, but there's no way to say that for certain. I'm sure Mr. Dade's aware of that. Yes. All right. Well, I guess I shouldn't say I'm sure. I'm accepting your representation that Mr. Dade is aware of that. Thank you, Your Honor. Thank you. Is my Mr. Yadin? Good morning. May it please the court, Ken Yadin from the United States. Your Honors, the district court did not err here. There was ample evidence in the record to support the court's finding that Mr. Dade was a leader of the offense, as he received a two-level guideline enhancement for his leadership role. The evidence showed that Mr. Dade told Chisholm and Ware what to do. He caused them, as they admitted in their brief, at page 2 to prepare fraudulent mortgage loan applications. Mr. Dade provided Chisholm and Ware with the information and information necessary to prepare the loan packages to qualify these buyers to make W-2s, in the case of Ms. Peters, an increase in the rental amount in order to qualify her for a loan. The state also told Chisholm and Ware what to do with those fraudulent loan packages, namely to send those to the lenders in order to obtain these fraudulent loans. And this, and he was, his involvement, Dade's involvement was for the, it was a conspiracy of five years, roughly five years, or it was multiple years? It was multiple years, Your Honor. Four to five years, and it was $820,000 over that time frame? That was the finding of the district court as to the loss. It was the government's position that the loss was more along the lines of $5.1 million, but the district court's finding was the loss was $800,000 here. And, Your Honor. And what share did Dade get? What was the It's my, it's my recollection that he refinanced several loans himself. The number of $36,000 sticks up my mind as to one of the loans. I think that's, that's count five. I don't, I don't have, and I don't think the record actually reflects exactly what he took away from this particular scheme. He did, though, pay defendant Chisholm, codefendant Chisholm, make extra payments to her as a reward for her work done, which is, which is further evidence supporting the And the court asked at the conclusion of counsel's presentation what the, what the guideline range would be were there to be a two-level reduction. It would be reduced, it would be a level 22, which would be a guideline range of 41 to 51 months, which is still twice as much as the sentence the defendant received here. If there are no more questions, I will. So he could go 41 to, I'm sorry, what was the range? 41 to 51. And I just had one other questions about, about that plea agreement. So she made the various changes. Was she also paid by Dade, that is Peters? I don't believe there's any evidence in the record of direct payments from Dade to Peters as there were from Dade to Chisholm. Could you speak up and repeat that, please? I don't believe there's any evidence in the record of payments from Mr. Dade to Ms. Chisholm as there were payments from Mr. Dade to, excuse me, Mr. Dade to Ms. Peters as there were payments from Mr. Dade and Ms. Chisholm. And who recruited the mortgage brokers to be part of the scheme? The, I believe they all came together through Mr. Dade. I mean, as to who actually got, how Mr. Dade came to, came to meet Ms. Peters, how he came to meet Ms. Ware, I think they just knew one another in the business and he brought them into the scheme as well as, they were a part of it. Now the time frame of this scheme is how long? It was August 2004 through June 2008 and that's, that's paragraph one of the PSR as well as in the indictment, Your Honor. And is Mr. Dade in from the beginning? He is. Yes, it begins with count one, which charged a property that, that he caused a fraudulent mortgage loan to be obtained for. And he's the one who and Chisholm who were the loan officers, right? That's correct, that's correct. Now with respect to one of the buyers, I think it's count three, buyer B, that buyer actually initially came in to Ms. Chisholm to send over to Mr. Dade, who then found a property for them, actually found, I think it's a total of three properties, sent them back to Ms. Chisholm to have the loan application prepared. When he found out the buyer didn't make enough money, he then obtained the false documents and instructed Ms. Chisholm to, to have that buyer list their employment as Gyra Development, which was a out-and-out fake company used to qualify buyers for mortgage loans. And was there anybody else that created these false documents? The W-2 forms, the payroll stubs, did anybody else in the scheme create them? Mr. James, the false documents came from James Co-Conspirator in the scheme. They didn't come from Ware, Chisholm, or Peters, with the exception of the lease, which Ms. Peters was instructed to change. But Dade instructed the uncharged co-conspirator to create such documents? Yeah, he did. Mr. Wilson was in the business of creating false documents. Many people, including Mr. Dade, put in orders with him and then received documents back. So what were the sentences for Ware, Chisholm, and Peters? Ware and Chisholm received sentences of five months. Peters received a sentence of nine months. So they all pled, right? They all pled, Your Honor. I guess we have no other questions. Thank you, Your Honors. Mr. Thompson? And Your Honor, just so the record's clear, Mr. Dade also pled guilty, but did so without an agreement. It was a contested plea of sentencing, or a contested sentencing, rather. I did want to touch on the payment to Ms. Chisholm. Ms. Chisholm and Ware were primarily receiving money from the scheme just by processing the loans. They were receiving the same money they would receive from processing a legitimate loan. But the payment to Chisholm was an additional payment because she knew she was participating in a fraudulent scheme. So she was taking increased risk, obviously, than she would by preparing a legitimate loan. So she wanted an increased payment. That doesn't mean that there was leadership or control. That was just the amount of money she deemed necessary to receive to participate in the fraudulent scheme. It is not evidence that Mr. Dade was somehow her supervisor or her manager. These parties came together and agreed on what they were going to do in order to make the scheme happen. Mr. Thompson, you mentioned, I believe, a little earlier about the favorable consideration entering the 3553 consideration. What were those favorables? Your Honor, there were testimony about the charitable organizations he had participated in in the community, his general lack of criminal history, and letters and testimony about his general good character outside of this scheme. Beyond that, I don't recall any specific things. So is your bottom line there is no leader in this scheme? It is, Your Honor. I don't think this is a hierarchical organization at all, other than perhaps Ms. Peters being lower down the list than some of the other people might be. I'm not certain I would even go that far, but yes, I don't think this is the type of scheme that had a hierarchy or a leader. And because of that, we ask the sentence be vacated. Thank you, Mr. Thompson. Thanks to government counsel. Case is taken under advisement. Court will proceed to the...